Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| KARINA GALLARDO TROCHE<br><br>Apelada<br><br>v.<br><br>JORGE JAVIER MARRERO GERENA<br><br>Apelante | KLAN202401128 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Núm. CA2024RF00292<br><br>Sobre: Hogar Seguro |
|---|---|---|
| KARINA GALLARDO TROCHE<br><br>Apelante<br><br>v.<br><br>JORGE JAVIER MARRERO GERENA<br><br>Apelado | KLAN202401129 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Núm.: CA2024RF00292<br><br>Sobre: Hogar Seguro |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez

**Figueroa Cabán, Juez Ponente**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 5 de febrero de 2025.

Comparecen el señor Jorge Javier Marrero Gerena, en adelante el señor Marrero y la señora Karina Gallardo Troche, en adelante la señora Gallardo y solicitan que se deje sin efecto la *Resolución* emitida el 15 de noviembre de 2024 y notificada el día 18 del mismo mes y año por el Tribunal de Primera Instancia, Sala de Carolina, en adelante TPI. Mediante la misma se dejó sin efecto una sentencia que decretó determinado bien inmueble como hogar seguro del menor B.R.M.G.

Por solicitar la revisión de una *Resolución* acogemos los recursos presentados como *certiorari* sin

Número Identificador

RES2025 _____

modificar su clave alfanumérica y por las razones que expondremos a continuación, se deniega la expedición del auto.

-I-

En el contexto de una reclamación de Hogar Seguro al amparo del Art. 477 y subsiguientes del Código Civil de 2020, presentada por la señora Gallardo,[1] y luego de que el señor Marrero se allanara a la solicitud,[2] el TPI declaró con lugar la *Demanda* y decretó como Hogar Seguro en beneficio del menor B.R.M.G, el inmueble sito en la urbanización Vistamar Marina, Número B-9, Calle Pontevedra, Carolina, Puerto Rico, 00983-1505[3].

Así las cosas, Venezia Club House LLC solicitó intervenir en el pleito de epígrafe. Reclamó la revocación de la designación de Hogar Seguro "por haber sido obtenida de forma deshonesta y manipulando el sistema judicial".[4]

Oportunamente, las partes se opusieron a la solicitud de intervención.[5]

En dicho contexto procesal, el TPI emitió la *Resolución* cuya revisión se solicita. Formuló las siguientes determinaciones de hechos:

> El 2 de septiembre de 2022, se emitió una Resolución en el caso núm. **BY2022RF01376**, entre las mismas partes Karina Nicole Gallardo Troche, Jorge Javier Marrero Gerena, Ex Parte, mediante la cual el Tribunal Superior de Bayamón le concedió a la demandante la **custodia monoparental del menor, así como la patria potestad exclusiva.**

> En el caso núm. **BY2022RF01376** la demandante indicó que ella era "comerciante, soltera y vecina de Guaynabo, Puerto Rico. Su dirección física y postal es: **Urb. Parkville, X-1O Calle Alaska, Guaynabo** PR 00969", estamos citando.

---

[1] Apéndice del KLAN202401128, págs. 1-2.
[2] *Id.*, págs. 3-4.
[3] *Id.*, págs. 5-6.
[4] *Id.*, págs. 7-12.
[5] *Id.*, págs. 43-55.

Es decir, **cuando el menor tenía 9 meses de nacido la demandante residía con éste en Guaynabo pues así lo indicó la misma demandante en el caso BY2022RF01376.**

Dos años después de emitida la Resolución sobre custodia, patria potestad y alimentos del menor en el caso núm. BY2022RF01376, la demandante presentó el **2 de mayo de 2024**, la demanda de epígrafe solicitando un decreto judicial sobre hogar seguro en favor del menor.

En la demanda la demandante indicó que "su dirección física y postal es B9 Calle Pontevedra Vistamar Marina Carolina, P.R 00985-1505", estamos citando.

En la demanda también se indicó que "durante la relación de pareja las partes **constituyeron el hogar familiar en la residencia que ubica en la Urbanización Vistamar Marina,** número B-9, Calle Pontevedra, Carolina, Puerto Rico", estamos citando.

Al día siguiente de presentada la demanda, o sea, el 3 de mayo de 2024, el demandado presentó contestación a demanda y expresó que "Se allana a la solicitud de designar como Hogar Seguro la propiedad de Vistamar Marina en Carolina," estamos citando.

**Como en ese momento este Tribunal desconocía que la propiedad de Vistamar Marina en Carolina era objeto de otro pleito radicado anteriormente, ya que ninguna de las partes se lo informó al Tribunal,** el 7 de mayo de 2024, se dictó Sentencia declarando Con Lugar la demanda de epígrafe.

Recapitulando, aun cuando la demandante asegura en el caso de autos que el menor **siempre ha vivido con ella en Vistamar Marina en Carolina** previamente, o sea, en el caso núm. **BY2022RF01376,** la demandante indicó que ella era "comerciante, soltera y vecina de **"Urb. Parkville, X-10 Calle Alaska, Guaynabo** PR 00969," estamos citando.

Más aun, el **19 de enero de 2021,** Venezia Club House LLC presentó una demanda contra el demandado de epígrafe sobre Cumplimiento Específico de Contrato de Opción de Compraventa; Daños Contractuales. La parte demandante alegó que en el Contrato de Opción el Vendedor le otorgó al Comprador una opción de compraventa, sujeto a los términos y condiciones de dicho contrato, de la propiedad localizada en la Urb. Vistamar Marina Este, B-9 Calle Pontevedra E., Carolina PR 00983.

El **4 de octubre de 2022,** o sea, **luego de radicada la demanda** sobre Cumplimiento Específico de Contrato de Opción de Compraventa; Daños Contractuales, la demandante-madre custodia del menor **suscribió el contrato de arrendamiento de la propiedad sita en Vistamar Marina, Carolina. De hecho, este contrato de arrendamiento fue notarizado por la Lcda. Maraliz Rivera Gutiérrez, quien a su vez representa al demandado tanto en el caso de epígrafe como en el caso de ejecución de sentencia, desahucio y lanzamiento.**

El **25 de mayo de 2023**, el Tribunal de Primera Instancia emitió la Orden de Prohibición de Enajenación de Inmueble y Anotación en el Registro de la Propiedad.

El **30 de junio de 2023**, el Tribunal dictó una Sentencia Sumaria mediante la cual declaró Con Lugar la demanda **"ORDENANDO la venta de la propiedad localizada en Urb. Vistamar Marina** Este, B-9 Calle Pontevedra E., Carolina PR 00983 bajo los términos y condiciones establecidos en el Contrato de Opción libre y voluntariamente suscrita entre las partes".

El **28 de noviembre de 2023**, en el caso núm., KLAN202300678, el Tribunal de Apelaciones confirmó la Sentencia Sumaria dictada en el caso Venezia Club House LLC v. Jorge Javier Marrero Gerena, CA2021CV00111.

Aún insatisfecho, el demandado acudió al Tribunal Supremo de Puerto Rico, mediante *Certiorari*, **el cual fue denegado el 14 de febrero de 2024.**

Es decir, cuando la demandante presentó el **2 de mayo de 2024**, la demanda de epígrafe solicitando un decreto judicial sobre hogar seguro en favor del menor, **ya otra Sala Superior del Tribunal de Instancia de Carolina había ordenado la venta de la propiedad de Vistamar Marina, el Tribunal de Apelaciones había confirmado dicho dictamen y el Tribunal Supremo se había negado a revisar**.

**Ninguna de las partes le informó nada de ello a este Tribunal: de haberse informado este Tribunal no hubiera decretado la propiedad de Vistamar Marina de Carolina como hogar seguro del menor.**

El **31 de mayo de 2024**, Venezia Club House LLC presentó ante el Tribunal de Primera Instancia Moción Solicitando Ejecución de Sentencia, Cumplimiento de Orden y Lanzamiento.

El Tribunal de Primera Instancia declaró Ha Lugar la Moción Solicitando Ejecución de Sentencia, Cumplimiento de Orden y Lanzamiento, autorizó y ordenó al Alguacil del foro primario a otorgar la Escritura de Compraventa, y **ordenó el lanzamiento de todos los demandados, incluyendo al señor Marrero Gerena, la señora Karina Gallardo Troche**, y cualquier arrendatario, ocupante y/o poseedor de la Propiedad.

El 17 de octubre de 2024, en el caso núm., KLCE202401016, el Tribunal de Apelaciones confirmó la Resolución dictada el 20 de agosto de 2024, en el caso Venezia Club House LLC v. Jorge Javier Marrero Gerena, CA2021CV00111, mediante la cual el Tribunal de instancia declaró No Ha Lugar la Moción Urgente al Amparo de la Regla 49.2 de Procedimiento Civil, presentada por el demandado… En su Sentencia el Tribunal de Apelaciones consignó que:

"La parte peticionaria ha actuado de forma frívola y temeraria ante la **continua utilización del sistema judicial de forma arbitraria, pese a la existencia de una sentencia final y firme. Lo anterior, con el propósito de continuar dilatando la**

**ejecución de la Sentencia**. Ante esta conducta, se le impone a la parte apelante el pago de honorarios por temeridad en la suma de tres mil dólares ($3,000.00) en sellos de Rentas Internas".

Luego de haber examinado en detalle los expedientes judiciales CA2021CV00111 y BY2022RF01376, **este Tribunal no tiene la menor duda de que las partes solicitaron que este Tribunal declarase el hogar seguro sobre la propiedad de Vistamar Marina de Carolina para evitar la ejecución de la Sentencia del caso CA2021CV00111 y su ulterior lanzamiento**.

Por tanto, era indispensable que este Tribunal permitiera la intervención de Venezia Club House LLC en el caso de autos.

El proceder de las partes de epígrafe no solo es cuestionable desde el punto de vista ético, sino que la continua utilización del sistema judicial de forma arbitraria, pese a la existencia de una Sentencia final y firme emitida en el caso núm. CA2021CV00111, raya en la temeridad absoluta.[6]

A la luz de lo anterior, el foro revisado concluyó:

*Simple y sencillamente no procedía el decreto de hogar seguro solicitado por la demandante en el caso de autos, sobre la propiedad de Vistamar Marina de Carolina, pues el dominio del Inmueble ya no le pertenecía al demandado y el dictamen Judicial que así lo decretó era final y firme a la fecha en que se solicitó el dictamen de hogar[sic]*.[7]

Le impuso a cada parte el pago de $3,000.00 por concepto de honorarios por temeridad.[8]

Inconforme, el 17 de diciembre de 2024 el señor Marrero presentó una *Apelación*, clasificada alfanuméricamente como KLAN202401128, en la que alegó que el TPI cometió el siguiente error:

EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL IMPONER UNA SANCIÓN SEVERA POR TEMERIDAD, CONSIDERANDO QUE EL SEÑOR MARRERO COMPARECIÓ COMO PARTE DEMANDADA Y SU ÚNICA ACTUACIÓN FUE ALLANARSE A LA DEMANDA PRESENTADA EN SU CONTRA. SU CONDUCTA ESTUVO MOTIVADA ÚNICAMENTE POR SU ROL COMO PADRE DE FAMILIA, ACTUANDO EN DEFENSA Y PROTECCIÓN DE LOS INTERESES DE SU HIJO.

Ese mismo día, la señora Gallardo presentó una *Apelación*, clasificada alfanuméricamente como

---

[6] *Id.*, págs. 112-114. (Énfasis en el original.)
[7] *Id.*, pág. 115. (Énfasis en el original.)
[8] *Id.*,

KLAN202401129 en la que arguyó que el TPI cometió los siguientes errores:

> EL TRIBUNAL DE PRIMERA INSTANCIA INCURRIÓ EN ERROR AL EXCEDERSE EN EL USO DE SU DISCRECIÓN, OMITIENDO HECHOS FUNDAMENTALES DEL CASO Y PRIORIZANDO ASPECTOS DE MENOR RELEVANCIA E INCLUSO IMPERTINENTES. ESTO LLEVÓ AL ILUSTRADO FORO A INTERPRETAR DE FORMA EQUIVOCADA LOS SIGUIENTES ASUNTOS:
>
>> A. LOS REQUISITOS DE LEGITIMACIÓN ACTIVA DEL MENOR DE EDAD BRMG PARA RECLAMAR SU DERECHO A UN HOGAR SEGURO, ASÍ COMO LA JUSTICIABILIDAD DE SU CAUSA DE ACCIÓN.
>>
>> B. EL DOMINIO SOBRE LA PROPIEDAD DEL PADRE DE FAMILIA Y LA CONFUSIÓN DEL TRIBUNAL RESPECTO AL MOMENTO EN QUE ESTE PERDIÓ DICHO DERECHO.
>>
>> C. LA VIOLACIÓN AL DEBIDO PROCESO DE LAS PARTES MENCIONADAS EN RELACIÓN CON LA ALEGACIÓN DE FRAUDE BAJO LA REGLA 49.2 DE PROCEDIMIENTO CIVIL, 32 LPRA AP. V.
>>
>> D. LA DECLARACIÓN INJUSTA DE TEMERIDAD EN CONTRA DE LA PARTE DEMANDANTE EN REPRESENTACIÓN DEL MENOR BRMG.

Por solicitar ambos recursos la revisión de la misma Resolución, ordenamos su consolidación.

Luego de revisar los escritos de las partes y los documentos que obran en autos estamos en posición de resolver.

**-II-**

**A.**

Como cuestión de umbral, la Regla 52.1 de Procedimiento Civil establece el alcance de la revisión discrecional de las resoluciones u órdenes interlocutorias emitidas por el Tribunal de Primera Instancia en los siguientes términos:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de

Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia[…].[9]

**1.**

Rebasado el umbral establecido en la Regla 52.1 de Procedimiento Civil, *supra*, corresponde a este tribunal intermedio determinar si procede revisar la determinación interlocutoria recurrida.

A esos efectos, el auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[10] Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios.[11] Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera.[12]

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre el particular dispone:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

---

[9] Regla 52.1 de Procedimiento Civil (32 LPRA Ap. V).
[10] *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005).
[11] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 729; *García v. Padró*, *supra*, pág. 334.
[12] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 711-712 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[13]

**B.**

La intervención es un mecanismo procesal de gran utilidad. Procede cuando un tercero solicita ser incluido en una acción pendiente ante los tribunales como parte demandante o parte demandada.[14] Uno de los beneficios de este recurso procesal consiste en ofrecer protección a un nutrido e indefinido grupo de personas con variados intereses, en ocasiones de importancia pecuniaria o legal.[15]

Ahora bien, la Regla 21 de Procedimiento Civil regula la intervención de personas, naturales o jurídicas, en un pleito en el cual no son parte y autoriza a intervenir cuando, *inter alia*, se tiene un

---

[13] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 848; *Mun. Caguas v. JRO Construction, Inc., supra*; 4 LPRA Ap. XXII-B, R. 40.
[14] R. Hernández Colón, *Derecho procesal civil*, 5ta ed., San Juan, Lexis-Nexis, 2010, Sec. 1306, pág. 167.
[15] *R. Mix Concrete v. R. Arellano & Co.*, 110 DPR 869, 873 (1981).

interés en el asunto objeto del litigio que puede quedar afectado con su disposición final.[16] Al evaluar una solicitud de intervención corresponde analizar en primer lugar, si existe un interés que amerite protección y si como cuestión práctica dicho interés quedaría afectado por la ausencia del interventor.[17] En su aplicación prevalece un análisis pragmático, más que conceptual.[18] Aunque el mecanismo de la intervención se debe interpretar liberalmente, ello no significa que proceda refrendar su uso irrestricto "fallando en toda instancia a favor de la intervención".[19]

### C.

El Tribunal Supremo de Puerto Rico, en adelante el TSPR, ha establecido que la intención legislativa al aprobar la *Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar*, en adelante Ley Núm. 195-2011, consiste en "crear un derecho individual en cuanto al hogar seguro, pero limitándolo solamente a aquella propiedad que sea utilizada por el titular como su residencia principal".[20]

Conforme a la Ley Núm. 195-2011, las circunstancias necesarias para solicitar el derecho a hogar seguro son:

> Todo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la estructura enclavada en el mismo, o una residencia bajo el régimen de la Ley de Condominios, o una residencia edificada bajo el derecho de superficie, **que le pertenezca o posea legalmente**, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal.[21]

---

[16] 32 LPRA Ap. V, R. 21.
[17] *IG Builders et al v. BBVAPR*, *supra*, pág. 321.
[18] *Id*.
[19] *Id*.
[20] *Rivera García v. Registradora*, 189 DPR 628, 637 (2013).
[21] Art. 3 de la Ley Núm. 195-2011 (31 LPRA 1858).

En lo aquí pertinente, el Art. 477 del Código Civil de Puerto Rico de 2020, que aplica a los hechos del presente caso, establece que:

> Cualquiera de los excónyuges o cualquiera de los hijos que quedan bajo su patria potestad, puede solicitar el derecho a permanecer en la vivienda de la Sociedad de Gananciales que constituye el hogar principal del matrimonio y de la familia antes de iniciarse el proceso de divorcio. Este derecho puede reclamarse desde que se necesita, en la petición de disolución del matrimonio, durante el proceso o luego de dictarse la sentencia. En los casos donde la vivienda familiar principal sea privativa de cualquiera de los excónyuges y exista otra vivienda perteneciente a la Sociedad de Gananciales, el Tribunal podrá establecer como vivienda familiar la propiedad perteneciente a la Sociedad de Gananciales. En los casos en que no exista una vivienda perteneciente a la Sociedad de Gananciales, el tribunal determinará como se cumplirá con el derecho a hogar seguro.[22]

De conformidad con lo anterior, el *Código Civil Año 2020 Comentado* dispone que "el derecho de hogar seguro puede recaer en un bien privativo si se utilizó como la vivienda familiar principal durante el matrimonio… Lo determinante es que la residencia constituya el domicilio conyugal al momento de la radicación de la acción de divorcio o nulidad".[23]

Así pues, **la posesión legal de la residencia principal conlleva analizar si quien reclama el derecho a hogar seguro ostenta el dominio, es decir, si tiene '…la facultad [para] usar y disponer libremente de lo suyo. Plenitud de los atributos que las leyes reconocen al propietario de una cosa para disponer de ella'.[24]**

---

[22] 31 LPRA 6851.
[23] Oficina de Servicios Legislativos, *Código Civil Año 2020 Comentado*, https://8b1bf758-1982-44d6-af7c-944f8408e8fa.filesusr. com/ugd/5be21a_15cd7772b7ca4ecd84035ed394e1e517.pdf(última visita, 4 de febrero de 2025).
[24] *Hernández Colón v. Srio. de Hacienda*, 115 DPR 145, 161 (1984) (Énfasis suplido).

**D.**

Con respecto a la concesión de costas y honorarios de abogado, la Regla 44.1 de Procedimiento Civil dispone lo siguiente:

    (a)    *Su concesión.* – Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. […]

    (b)    […]

    (c)    […]

    (d)    *Honorarios de abogado.* – En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.[25]

En términos generales, se considerará temeraria toda aquella conducta que haga innecesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias.[26] La imposición de intereses y honorarios de abogado por temeridad es una facultad discrecional del tribunal sentenciador que no será variada a menos que la misma constituya un abuso de discreción.[27]

**E.**

Por otro lado, es norma firmemente establecida que los tribunales apelativos no intervienen con el manejo de los casos por parte del Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho

---

[25] 32 LPRA Ap. V, R.44.1.
[26] *Pérez Rodríguez v. López Rodríguez*, 210 DPR 163, 193 (2022); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013).
[27] *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 150 (2022); *Pérez Rodríguez v. López Rodríguez*, *supra*, pág. 193.

sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[28] Conviene destacar que "la discreción se fundamenta [,entre otras,] en el contacto con los litigantes y la prueba que se haya presentado"[29] ante el foro sentenciador. Por esta razón, se presume que el Tribunal de Primera Instancia conoce mejor las particularidades del caso y está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar para llegar eventualmente a una disposición final.[30]

De modo que, el ejercicio de las facultades discrecionales por el foro de instancia merece nuestra deferencia salvo que incurra en algunas de las conductas previamente mencionadas y si a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación".[31]

**-III-**

En esencia, el señor Marrero solicita la revocación de la sanción de temeridad por ser desproporcionada y contraproducente. A su entender, esta sanción "afectará de forma indirecta al menor, quien es el principal beneficiario de los recursos de su padre". Abona a lo anterior, que "ha actuado en todo momento motivado por

---

[28] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón*, 2023 TSPR 145, 213 DPR ___ (2023); *Cruz Flores v. Hospital Ryder Memorial Inc.*, 210 DPR 465, 497 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 338 (2021); *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 273 (2021); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 276 (2019); *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015).
[29] *Citibank v. ACBI et al.*, *supra*, pág. 736.
[30] *Meléndez Vega v. El Vocero de PR*, supra, pág. 142; *Mejías et al. v. Carrasquillo et al*, 185 DPR 288, 306-307 (2012). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón*, *supra*.
[31] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020).

la preocupación y el deber inherente de proteger a su hijo".

Al igual que el señor Marrero, la señora Gallardo solicita que se deje sin efecto la *Resolución* recurrida. En su opinión, el derecho a Hogar Seguro todavía no ha sido evaluado por ninguno de los foros que han intervenido en el presente caso y, además, la importante controversia jurídica que aquí se plantea "merece ser analizada y resuelta mediante un proceso jurídico adecuado".

Como cuestión de umbral determinamos que por tratarse de un caso de relaciones de familia tenemos facultad para atender la Resolución ante nuestra consideración.

Luego de revisar cuidadosamente el expediente determinamos que ni el remedio ni la disposición recurrida son contrarios a derecho.[32]

A esto hay que añadir, que no se configuran ninguna de las circunstancias que justificarían la expedición del auto al amparo de cualquier otro de los fundamentos de la Regla 40 de nuestro Reglamento.

Finalmente, considerada como una determinación sobre manejo del caso, no encontramos que se observen alguna de las situaciones que justificarían nuestra intervención revisora.

**-IV-**

Por los fundamentos previamente expuestos, se deniega la expedición del auto de *certiorari*.

---

[32] Regla 40 (A) del Reglamento del Tribunal de Apelaciones, *supra*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

El Juez Salgado Schwarz está conforme con la determinación con las siguientes expresiones:

"La conducta de los litigantes, y sus representaciones legales a través del trámite llevado a cabo en el caso ante nuestra consideración, demuestra irreverencia hacia los principios básicos de la Justicia. El asunto presentado ante el Tribunal de Primera Instancia representa un caso simulado para burlar la validez de una sentencia final y firme, con miras a perjudicar derechos de terceros. Acción contumaz y reprochable, a la cual le añadiría sanciones adicionales a ambas partes, y sus representaciones legales, por abusar del sistema y hacer que el Tribunal pierda su tiempo."

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones